## Case No. 13,102.

### SMITH v. The ROYAL GEORGE.

[1 Woods, 290.][1]

Circuit Court, D. Louisiana. Nov. Term, 1873.

MARITIME LIENS—GOODS DEPOSITED WITH CAPTAIN —SHIP CARPENTER.

1. A ship carpenter who deposits, for safe keeping. money and other valuables with the

[1] [Reported by Hon. William B. Woods. Circuit Judge, and here reprinted by permission.]

captain of a steamboat on which he is employed, has no lien upon the boat therefor.

2. The owner of an old and decayed boat employed libellant, who was a ship carpenter, to assist in building for him the hull of a new boat, and after it was completed, dismantled the old boat and used some of its materials in fitting up the new one. Held, that libellant had no lien on the new boat for his wages.

[Cited in Hartupee v. The Coal Bluff, No. 2, Case No. 6,172; The J. C. Rich, 46 Fed. 137.]

[Cited in The Victorian (Or.) 32 Pac. 1042.]

[Appeal from the district court of the United States for the district of Louisiana.]

In admiralty.

R. De Gray, for libellant.
F. W. Huntington, for respondent.

WOODS, Circuit Judge. The libel alleges in substance that on September 15, 1870, at Shreveport, Louisiana, the libellant was hired to go to Hind's Landing, Arkansas, on Little river, to assist in building a new hull for the steamboat Royal George, and when completed, to run on her as carpenter at the rate of $150 per month. That he was engaged in work upon said hull for the period of eight months, and until about the 13th day of May, 1872, about which latter date the Royal George left Hind's Landing for Shreveport, Louisiana, with the libellant on board in the capacity of carpenter, and while making said voyage, libellant was driven off the boat by the officers without payment of his wages. That when he went to work at Hind's Landing he deposited with James Crooks, the captain and owner of said steamboat, $350 in cash, and his watch worth $80. That Crooks refused to return him his money and watch, and also detained and refused to deliver the libellant's clothing of the value of $100, and his tools, also of the value of $100.

The libel asks a decree for $1,200 for wages, and for $630; that sum being equal to the value of his clothing, tools and watch, and the money deposited with the captain and owner. The claimant, James Crooks, filed an exception to the libel, alleging that the court had no jurisdiction of the matters set out in the libel, the same not being matter of admiralty and maritime jurisdiction. By consent of both parties, this exception was set down for hearing when the case should come up for trial upon its merits. The answer of Crooks. claimant, admits that there is due the libellant on account of his wages, the sum of $560.69, which it avers has been tendered to him and refused. It admits the deposit of the $350, which claimant says he is ready to pay over on demand, but denies that he ever had possession of the clothes, watch or tools of libellant, and denies that libellant was ever driven from the Royal George by her officers, and avers that he left the boat of his own free will. The district court dismissed, for want of jurisdiction, the

claim of libellant for money deposited, and for the value of his clothing and tools, alleged to be detained by claimant, and rendered a decree for wages for the sum of $901, with interest from date of judicial demand.

It is conceded by the claimant's counsel that the decree for wages is for the correct amount, but he denies the jurisdiction of the court to render such a decree upon the facts of the case as presented by the evidence. The proof does not sustain, in all respects, the case as made by the libel. The proof shows that libellant was employed by James Crooks, who was the master and owner of a steamer named the George, to go from Shreveport, in Louisiana, to Hind's Landing on White river in Arkansas, and there build the hull of a boat. That libellant went to said landing and worked, getting out timber and building a new hull. That when the hull was completed, the boilers of the George were put into it, her pilot house and roof were removed to and put up on the new hull. A new steamboat was thus completed, some of the materials of the George being used in the construction of the new boat. The new boat was called the Royal George, and was owned by Crooks, who was also her master. There is no evidence that libellant was shipped on the Royal George as carpenter, nor that he ever did any work on her as carpenter after she left the landing where she was constructed.

The claimant insists that the facts do not show a maritime contract. The point is, does a contract made with a shipwright to assist in the building of a new boat, on which some of the materials from an old dismantled boat are to be used, fall within the maritime law and give the laborer a lien upon the boat for his wages? The admiralty jurisdiction in cases of contract depends primarily upon the nature of the contract, and is limited to contracts, claims and services purely maritime, and touching rights and duties appertaining to commerce and navigation. 1 Conk. Adm. 19. In the case of People's Ferry v. Beers, 20 How. [61 U. S.] 393, the libel was filed by the builders against a new steam ferry boat for a balance due the builders on account of work done and materials employed in constructing the hull of the vessel. In passing upon this case the supreme court say: "The only matter in controversy is, whether the district courts of the United States have jurisdiction to proceed in admiralty to enforce liens for labor and materials furnished in constructing vessels to be employed in the navigation of waters to which the admiralty jurisdiction extends. The contract is simply for building the hull of a ship and delivering it upon the water. The vessel was constructed and delivered according to the contract, and was in the possession of the party for whom it was built when the libel was filed. It must be borne in mind that liens on vessels encumber commerce and are discouraged, so that when the owner is present no lien is acquired by the material man, nor is any when the vessel is supplied or repaired in the home port. The lien attaches to foreign ships and vessels only in favor of the carpenter who repairs in a case of necessity and in the absence of the owner. It would be a strange doctrine to hold the ship bound in a case where the owner made the contract in writing, charging himself to pay by installments for building the vessel at a time when she was neither registered nor licensed as a sea going ship. So far from the contract being purely maritime, and touching rights and duties appertaining to navigation on the ocean or elsewhere, it was a contract made on land, to be performed on land." So in Roach v. Chapman, 22 How. [63 U. S.] 129, the supreme court held that a contract for building a ship or supplying engines, timber or other materials for her construction, is clearly not a maritime contract. Any former dicta or decision which seemed to favor a contrary doctrine were overruled by this court in the case of the People's Ferry Co. v. Beers, 20 How. [61 U. S.] 393. In The Coernine [Case No. 2,944]. it was held that a contract made in a port of the United States to construct a vessel in a port of another state by actually building her, or by supplying materials for such construction, is not a maritime contract, creating a lien upon the vessel for the value of the materials, supplies or labor, which is enforceable in admiralty.

These decisions seem to establish very clearly that the claim of libellant in this case for work done is not a lien upon the steamboat. It is claimed, however, by libellant, that the rule laid down in Roach v. Chapman, supra, has since been modified, and we were cited in support of this view to the case of The Grapeshot, 9 Wall. [76 U. S.] 129. Neither the case of The Grapeshot, nor any other case to which we have been cited, changes the law laid down in Roach v. Chapman, to the effect that a contract for labor or materials to build a vessel is not a maritime contract, and that neither the shipwright nor material man has a lien therefor on the vessel. I am of opinion, therefore, that this court has no jurisdiction to render a decree for the wages due libellant. That we have no jurisdiction to render a decree for the money deposited, and for the value of the watch, clothing, and tools of libellant, is too clear to need argument.

The libel must be dismissed at the costs of libellant.

SMITH (SANDS v.). See Case No. 12.305.
SMITH (SCHMIDT v.). See Case No. 12.466.